Good morning, everyone. The panel has to report a total of four cases. One of them will be submitted without argument on briefs today. That is the White v. Department of Veterans Affairs, Appeal 2007-7277. We'll hear argument now in Appeal 2007-1250, Mangosoft v. Oracle. Mr. Dunn, good morning to you. Welcome to the court. Please proceed. Good morning, Your Honors. May it please the court, this is my first opportunity to argue in this courtroom. It's quite a nice one. We're happy to have you back in the service. Your Honors, the issue in this case is a straightforward one. It involves the meaning of local persistent memory device. The district court imposed a gloss on the claim terms. It held that that phrase is not satisfied unless there's a direct and unique connection between the memory device and the computer. Below, Oracle urged that that was a one-to-one relationship, one memory device per computer. And the district court so held on 18 and 19 of the appendix. Isn't that what Claim 1 says? No, Your Honor, it does not say that. So let's go and that's its principal argument. It says, as I read it, a plurality of computers, each of the pluralities, including a local persistent memory device coupled to said computer. It seems to me that you've got a local persistent memory device coupled to each of the pluralities. Your Honor, with due respect, I disagree. I disagree because this is an open claim. It includes the word comprising right in the second line. It includes the word including. Each of said plurality of computers, including, which is an open term. Now what does it include? It includes a local persistent memory device. And it faces a legion that says when you have a something, it can be one or more. So all this says is it includes at least one. That's all it says. What does including mean? Including means comprising. The cases equate including and comprising. It includes that, but it includes other things. In other words, it's not restricting. But it includes it where? Within the body of the PC? Or how does it include it? Well, it can, by way of example, it can include more than one. No, I understand that point. And then it says coupled to said computer. It doesn't say coupled only to said computer. If it said coupled only to said computer, we might have a different argument. When the original claims were in the case, claim one and claim two, claim two had very restrictive language. And the language was basically each coupled to a respective one of said plural computers. I understand the question of one versus several memories, but I'm trying to address a different point. I'm trying to see whether in this case the word including, rather than being simply as it usually is, the so-called open term, could be viewed as synonymous with containing. Your Honor, you're right. The device must include at least what is recited. It can include other things. And I'm saying that what is recited does not restrict the case to a one-to-one relationship or to any unique relationship. Because the word a before local persistent memory device opens into one or more, and it doesn't say coupled only to. If including means containing, that might lead to the conclusion that the PC has to contain the memory, and it can't contain a memory that's in some other PC somewhere else. Your Honor, it doesn't mean containing. It means comprising. The case is equated including with comprising, meaning it can open it to other things. I agree that normally that's so, and there certainly is much case law saying that. But it looks to me like this particular usage from the context may have implied the equation to the word containing. The person computer containing its own memory. Your Honor, there's nothing in the specification that says you mean containing it. It has to be its own memory. It can't be a memory outside the memory. That's the question? Your Honor, I don't think there's nothing in the prosecution history suggesting that. There's nothing in the specification suggesting that. Let me talk about the specification. The specification includes a RAID device in column three. A RAID device, a RAID configuration, includes multiple computers. It includes multiple disks. They say that that's not a subset of a local persistent memory device. That's just a generic memory device. Therefore, your argument with respect to RAID and the other examples that are in the series with the RAID devices doesn't produce any result. Your Honor, they do say that. But if you look at column three, lines 22 through 40, you will see that the RAID discussion is in a paragraph talking about local persistent memory devices. The entire paragraph is talking about local persistent memory devices. If you look at page 2438, it discusses RAID devices. Basically, in the appendix, it talks about having multiple disks which can be combined in a cluster, in a package, and then associated with a computer, meaning you've got multiple devices coupled to the computer. Well, what does associated with mean, partner? I mean, it's another one of these magic words in these claims and in the specification language that it's not very clear, at least initially, what associated with was intended to mean. Your Honor, I will rely on the claim term. The claim term is coupled. And if you look at the record, if you look at 2409 of the record, you will see that coupled has been characterized not only by a dictionary but by this Court's cases. Johnson Worldwide Associates v. SEBCO basically says, the unmodified term coupled generically describes a connection, does not require a mechanical or physical coupling, and the dictionary beyond that says coupled should be given its ordinary meaning of link to join. That's cited in another case in Northern District. Yeah, but when we talked about every claim term here, it seems to me, other than local, which seems to have been the key to this case and what the judge was construing here, the judge wasn't construing coupled, he was construing a local persistent memory. Your Honor, the District Court relied on coupled to get its direct connection. What local persistent memory means is best described in Column 9 and Column 10 of the patent. And if you look at Column 9 and Column 10 of the patent, you will see that they continually talk about the fact that the way this process works is that where the network node, which is a computer, has control over the memory storage element, then it can contribute it to the shared addressable memory space. And we have suggested that what local persistent memory device means is a memory device that can be contributed to the shared addressable memory space by a particular node. And what that basically means is that if the computer controls access to that particular memory device, then it's capable of contributing it to the shared addressable memory space. Doesn't that effectively read out of the claim award also? No, Your Honor, because if you look at one of their devices, the VeriSign device, which is reproduced in the blue brief on page 23, you will see that the network is the top horizontal line above the two nodes. And you've got ABC App Service above that. Local means that the computer has some control over the memory device. And Node 1 and Node 2 have some control over each of those two memory devices. But the App Service above it do not have any control because they have to go to another computer in order to reach those memory devices. So those computers at the top are not local. They are remote computers. The computers below the network line, but which are attached to the network line, are local computers. So our construction does not read local out of the claim. Local still has some work to do in the claim itself. Now, they argue that the specification actually supports the district court's opinion. And they refer to a disclosure at the top of column 3, which says the persistent memory device will be understood to include a plurality of local persistent memory devices, each coupled to respective one of the plural computers. That paragraph relates back to the first paragraph, which talks about in one aspect of the invention. That is an embodiment of the invention. Everything after the first four paragraphs of the summary invention basically discloses different embodiments can include in one aspect, so on and so forth. It also includes RAID to show, as a local system, to show that this case is not restricted to any unique connection, and it's not restricted to any direct connection. In fact, the entire specification never uses the word direct connection. In fact, the prosecution history doesn't use the word direct connection. And while there are unique and direct specific embodiments, the case is not restricted to those specific embodiments under the established case law. But Mr. General, looking back into what you just cited, which I believe is column 3, like lines 10 through 14. Yes. That's under a summary of the invention. So what is there about this language that we should read that suggests that this is only one embodiment? The previous paragraph starts off in one aspect. If you look at the second paragraph containing the language that you're looking at, 10 to 20, you will see four different terms which relate back to antecedents in the first paragraph. The storage relates back to persistent data storage. The persistent memory device relates back to a persistent memory device. There are four things. That second paragraph is just a more specific description of what is in that first paragraph, which starts out in one aspect, meaning it's an illustration of an embodiment of the invention. But the paragraph that we're referring to starts out by saying, in a system that distributes the storage across the memory devices of the network, doesn't that suggest that this covers the entire invention and we're not just talking about one particular aspect of the invention? No, Your Honor, because while you'll see at the very bottom there's another paragraph which also has the same kind of language, lines 50 through 61, and it talks about can be comprised. It talks about optional features. I suggest that this is an optional feature and also the language in 10 to 20 used the word includes, understood to include that, meaning it can include other things than that. In fact, claim 2, the original claim 2, was a restricted claim, and while that claim was ultimately combined with claim 1, it was combined with language that said in general we're combining 2 and 1, and they didn't include the last phrase. They excluded the last phrase, calling for a one-to-one relationship. That was excluded from claim 1. Your Honor, then you're suggesting that the signal that tells us whether it's one embodiment or the underlying invention is the opening word. So, for example, the paragraph that Judge Gross highlighted at the beginning of page line 10 in A system, A system 1, one example, and you say that refers back to the paragraph, but contrast that with the paragraph that next begins, which is at line 21, which talks about the systems, plural. Is it your suggestion that the paragraph starting at line 21 covers all of the embodiments, and that's contrasted from the paragraph starting at line 10 that's only talking about a single embodiment? Your Honor, I wasn't focusing on those words. I think all of these paragraphs are merely embodiments because they talk about, in a system that does one, it includes this. It can include other things. Even though it says these systems, it's followed with can also include. All through it, it's been misplaced. Even if that text refers to different embodiments and makes broader statements that might relate to the invention in a broader way, the claims that were presented originally were much broader than the claims that were allowed. The claims that were allowed were narrow, and the language that we've been debating, the local language, was added in order to place the case in condition for allowance. It seems to me, even if the summary of the invention in some places talks about the invention in broader terms, the claim that was ultimately allowed may not cover all embodiments. I don't know why is it a problem or why was it incorrect for the district court to construe the claim in a narrower way in light of the amendments, even if that means it only covers one embodiment. Your Honor, in the abstract, it could interpret it in a narrower way, but if you look at the language of the amended claim, it did not incorporate the very last phrase of Claim 2, which everybody argues is restricted to a one-to-one relationship. It didn't incorporate the language each coupled to a respective one of said plural computers. It incorporated other language from Claim 2. But even if a computer has more than one memory connected to it, each is connected to a respective one of the computers. Your Honor, it doesn't say in Claim 1 as issues. It doesn't say coupled to only one computer. That's what original Claim 2 said. This claim just says a device, meaning one or more, coupled to the computer. But it can't be coupled to the computer. It doesn't say it can't be coupled to another computer. Original Claim 2 said that. This claim does not say that. I see. Your Honor, you don't need to worry about your reserve of bubble time because we'll restore it in light of the questions that we're asking. And we'll give you the powers as far as finding additional time over and above the initial 15 minutes that we have parity of time. But let me ask you something a little bit different here. Suppose that we were to conclude that the word local is ambiguous in the context of the key claims here in light of the specification and so on. What about the public notice function of claims? What about the notion that he who would want to exclude others better be very clear about where the boundary line is so that competitors can avoid infringement because they can quickly see what technologies are covered by the claims and what are not? So perhaps the rule ought to be that if the applicant has failed to make it clear enough to fairly warn competitors, then the court should choose the broadest construction that was clearly set forth in the paradigm. What about that as a way of resolving this sort of ambiguity? Your Honor, I don't think it is ambiguous. And the reason I don't think it's ambiguous is if you – there's a lot of evidence, including extrinsic evidence, their own device showing three shots, three different figures, which are labeled local when there is control over, just as we submit, and remote when there's no control. And I submit if you look at Column 9, it basically describes the details. It talks about the owner of the memory device that has control over the memory device contributes it to the shared addressable memory space. I think if you look at the original – if you look at the prosecution history, the examiner, when he cited the Parrish case, disclosed Parrish as having three different local embodiments. One of them was one-to-one, one of them was plural-to-one, and one of them was plural-to-plural. The examiner himself recognized what local meant. If you read the intrinsic evidence supplemented by the extrinsic evidence, I don't think you end up with ambiguity. But the intrinsic evidence and the extrinsic evidence that you're pointing us to excludes the technical dictionary, which the district court, you contend, would rely on to determine what one's skilled in the art – how one's skilled in the art would construe what is a technical term. It would take issue with the district court's construction in that regard. Why? Your Honor, we don't say you should exclude the dictionary. What we said – we talked about the Texas digital approach. What we said was what the district court did was looked at the dictionary, essentially used the definition that Oracle has presented, and then looked to the spec to see whether there was anything inconsistent with that. That's a Texas digital approach, the combination of the two. We're not saying don't look at the dictionary. Look at it. It's extrinsic evidence. But the dictionary is not a global persistent memory device. The dictionary is a local device, and there's testimony basically saying – and that's defined as including the direct and unique connection, and it talks about peripheral equipment. And the evidence basically says at 2434, paragraph 13, that peripheral equipment does not include memory devices. So all I'm saying is even if you look at that dictionary, and we're saying fine, look at it, just don't follow the Texas digital approach. But even if you look at it, it does not lead to the bottom line that the district court reached or the bottom line that Oracle is suggesting this court should reach. All right. Thank you, sir. Mr. Power, you'll have six minutes to your time. Thank you, Your Honor. And your time will be fully restored. Thank you. Thank you, Mr. Donner. Mr. Power, good morning to you. Welcome to the court. Good morning, Your Honor. Thank you, Your Honor. And please, the court. I'd like to begin by addressing the last question posed by Chief Judge Michel about the notice function of claims. And I think in light of the file history, that's a particularly apt question. And I'd like to begin with the file history because I think the file history helps us in understanding the terms that the court has been struggling with in terms of including, as to what that means, containing, et cetera. And it's important to understand how the claims started and how they got where they are and then what the applicants said to the world about what they were doing. Because any reading, I believe, any fair reading of that file history leads to the conclusion that the district court's construction is correct. And the arguments that are being made now to try to obey the effects of their amendments are the kinds of fine parsings that don't satisfy the notice function that Chief Judge Michel has articulated. The original claim, original claim one, said that they did not have the word local. But as important, it said that persistent memory devices are coupled to the network. And the change that was made was to say, all right, we will not, we will both add the word local, which must be given meaning and implies location, but also change the fact that they're no longer coupled to the network. Instead, they're coupled to the computer. Those two changes taken in combination, I think, preclude the argument that is now being made, which is that networked memory can be local. And the argument that's being made is one that networked memory can be local as long as it is somehow controlled by a node. Yet when you look at the change that was made in the claims, there was clearly an attempt, and I don't think an ambiguous one, to take the drives, the hard drives or other memory, off of the network and make it local coupled to the computer. The argument that has just been made is, well, coupled is a broad term. We've construed it in other cases. Coupled can mean connected in some way. But not when the claim term used to say coupled to the network, because that's exactly what they're now trying to get back into. Are you suggesting that coupled to the network contemplated in a circumstance of centralized mega storage? It clearly did, but it was not limited to that. It was saying you could have any memory anywhere that's coupled to the network, and we're going to use that memory in a distributed way. That was the original scope of the claim. But then they couldn't get that money. They got rejected. There were several prior references. They got rejected twice after arguing once. And then they gave up and amended and said, okay, not only are we going to add local, which has to be given effect, but we're going to take that memory off of the network and say it's now coupled to the computer. But the argument that's being made now is that coupled to the network can be coupled to the computer because coupled should be given a broad definition. And that claim construction simply isn't permissible in light of that amendment. Now, in your brief, you said that after making the two amendments, you highlighted the claim were immediately allowed. They were. In allowing the claims, did the examiner reveal any rationale? The examiner's statement, as they often are, was not entirely illuminating. The examiner did not refer explicitly to the local issue. He's not using the word local. What the examiner did say, and this was in 1396 of the appendix, it said the amendment has highlighted a system that uses shared memory that comprises RAM and a disk storage medium. Those are the exact words. Now, RAM, the place that that language came from is the remarks explaining the amendment. Those remarks were at A1295, and those remarks are illuminating. They don't say this memory can be connected anywhere to the network. Coupled is a broad, expansive term. Instead, what they said is, and they said specifically two things, and the two things I think are helpful in answering each of the questions that have been asked by the court this morning. They said, quote, applicants submit that none of the relied-upon references teaches or suggests local volatile memory devices. That's one of the terms that was added. And then parens, e.g., RAM associated with each networked computer. Now, RAM associated with each networked computer, if anyone in this court suggests RAM inside that computer, it doesn't say RAM on another computer somewhere else on a network. That's just not what that means. Why wouldn't it mean RAM that is accessed, that is controlled by, as opposed to connected to? It says associated with. It does say associated. And associated can mean a lot of things. It can mean it's connected. It can mean it's in the same box. It can mean it's somewhere else, but it is uniquely controlled by. If we're doing a Talmudic linguistic reconstruction of the language, you can always find ambiguity. When you look at a specification where all of the shared memory is inside the box, figure one, the RAM is inside the box. Every single and bottom line that's described, where it's described as being local, it's inside the box. When you say to a group of people in the industry, the RAM associated with the computer, you normally think of that as inside the box. So if we sat here and tried to examine the language and say maybe they could have meant something else, one could always do that. I don't think that's the natural reading of the language. What do you mean inside the box? You mean in the diagram it's inside the box drawn in the figure. Exactly. But not necessarily inside the housing of a personal computer. I agree with that. I agree with that. But the other thing that they said, and by the way, they said, or persistent memory devices, e.g. hard disks associated with each network computer. Now typically that's a hard disk that's inside the box, or it could be connected via a cable. It typically doesn't mean a hard disk 3,000 miles away that's controlled by that computer. That's the normal meaning of the language they use. That appears to be the meaning that the examiner gave to it when he gave a notice of allowance. But they said something else, and this is important. They said specifically, this is after they've argued against the rejections twice. They said, all right, we have added, and it says, quote, and this is at 1391, in general, applicants have amended to claim one to include the subject matter of claims two, three, four, eight, nine. Now claim two, we all agree, has all the limitations the district court gave you. And they're telling the examiner, we've added the limitations of claim two in claim one. But of course they argue that the prefatory phrase in general means some of the limitations of those named claims, but not necessarily all of them. So what do you do with that? They argue two things. That's the first of them. To me that sounds like a lawyer looking for an argument as opposed to reading the clear meaning of the language. In terms of the notice function that Your Honor addressed earlier, people wouldn't be looking for exceptions to that language. They're saying that's what we added. I don't think that would be a fair reading of the language. A fair reading of the language says we've added the limitations of these two, not that we're reserving some exception we're not going to tell you about. The second argument made is the one that was also made this morning, that the precise language of the original claim two was not added in claim one. And that's true, because the original language of claim one, as it ultimately issued, had equivalent language in its structure, which is exactly the language that Chief Judge Michelle was pointing to earlier, saying each, and I believe Judge Lynn as well, that each computer contains or comprises and includes, etc., etc., etc. That same structure, the same concept of linking a computer to having the memory, and this goes to me directly to the question that I believe Chief Judge Michelle raised at the beginning, which is what in the world does including mean in this context? And plainly, when you look at claim two as it had been originally amended, a free amendment, and you look at their intent and what they said to the examiner, they said we've added claim two into claim one, and everybody agrees that original claim two had these limitations that the district court gave it. And you look at the structure and language of claim one, which says each computer has the local persistent memory. The logical, normal reading of that language, particularly in light of that file history, is precisely what the district court gave it. And that's even more buttressed by the fact that that is the normal meaning of the word local. But didn't the district court also require direct physical attachment, physical attachment? Direct connection, yes. What the district court said is there's not an intervening communications channel. So, for example, something on the same bus would clearly be a direct connection. But something where you're going through a node or a switch or something else, where you have to go outside to a network, which is what they were trying to distinguish. Everything in the specification says we're distinguishing network drives. We're talking about local drives. And yet what they're now trying to recapture is network drives. And I will note, I think it's important to note that A8858, in their opposition to summary judgment below, Mango Soft, in their brief, acknowledged that this amendment, precisely the amendment we're talking about now, which added claim two into claim one,  they admitted that that was taking the drives off the network and making them local. And the quote is, the amended claim took the device off the claimed network and coupled it to the computers. Close quote. And that's precisely what we are arguing here. Yeah, but it doesn't seem to preclude it being coupled to mobile storage devices. I agree with that. That's not the issue. That has been, to my mind, a red herring that's been put in that's inappropriate. If you think about it in a master-slave analogy, a master can have multiple slaves, but each slave has one master. That's the one-to-one relationship that gets its support found. That's the only one-to-one relationship that's been argued at any time in this case by us. When you talk about network memory, what do you mean by that? I mean one where you have to go through an intervening communications channel, like a switch, like off into another network when you're going in order to find it. That is what the district court concluded. And it is important, and I believe Judge Lynn asked this question earlier, a single computer can certainly have multiple local memories. That's certainly true. And we've never argued to the contrary. The district court never found to the contrary. It's never been an issue for that. But every slave has to have one master. And that is what's meant by the claim language, which says each is coupled to its respective computer. What about the diagram to which Mr. Gunner directed us on page 23 of the blue brief, which was the very same system? If we talk about who's the master, who's the slave, et cetera, I understood him to suggest, for example, that node one is the master of both the memory disk right underneath it, the vertical arrow, and the memory disk off to the right, the horizontal arrow. And so contrary to your articulation of the premise, I guess he would say that the disk in the lower right part of that diagram has two masters, node one and node two. It is certainly possible that disks out there in the world can have multiple masters. They're not local, though, within the meaning of this claim in the specification under this file history. There are many, many network memory drives. And they can be called upon by various nodes. That's the type of system that they were disclaiming in the specification. There's no doubt that that's physically possible. There's no doubt that it's common. Do you agree that the central concept suggested by the total patent document is more one of control than physical attachment? I disagree violently. It might be too strong a term. The portion in which Mr. Gunnar relies is column 9 and 10 of the specification. And column 9 and 10 are discussing not what is local persistent memory. They're discussing, and this, again, Your Honor, portion really begins at column 9, line 13. That's the portion that is cited by Magnasoft in particular. It really goes to the very top of column 10. That portion of the specification is discussing a different portion of the claim you mentioned called the directory manager. That is the last limitation of Claim 1. It's a different aspect of the invention. How do we know that? The first sentence says, The control of the distributed shared memory can be coordinated by the directory manager 44 and memory controller 46. And the rest describes how that directory manager 44 works. And, yes, the control of information is important because that's how you go find the information around the system that you need to find. But that is a different limitation of the claims. And it is not describing what is local and what is non-local. And, in fact, in columns 9 and 10, where it does use the word local, it's using it to distinguish it from something that's not local in exactly the way that we've described in the court file. Can I ask you a question that's really probably outside the confines of this appeal? But in this case, as you and Mr. Dunner have both pointed out, there was extensive prosecution history of comments made by the prosecuting attorney, comments made by the examiner, quite a bit of back and forth, claim amendments and so on. And in the light of them, obviously, some of the things contained in the original specification are no longer operative or have been even potentially, I suppose, contradicted. And yet, by what the final claim language says. And yet, in the way the practice is done, nothing that's no longer operative is deleted out of the specification. And so it leaves us in this dilemma where all this verbiage is still in there that people can resort to in making arguments. Maybe it's not practical. Maybe the examiners couldn't do it. But it might actually be very helpful if the specification had deletions or alterations to conform with later claim amendments. So there would be a greater correspondence between the allowed claim and the supporting specification than we, in fact, have as illustrated by this case. It's a very common problem when you have narrowing amendments that are made that exclude embodiments that occur. That happens in many, many cases. And it produces arguments of the type that we have here. I could imagine it being more difficult to do that clearly inside the patent office than it might be to do it here, sadly. But the fundamental problem – I'm not too optimistic about the court. Maybe we couldn't do it well enough, I don't know. Here, at least, I think it's not as difficult as it might be in other cases because you have an original claim that said that you have memory coupled to the network. And you change that by saying it's taken off the network and it's made local and it's coupled to the computer. To give that change meaning precludes the construction that Mangosoft is now arguing. Of course, he – Mr. Gunnar says I think it has to be coupled to a computer, but not necessarily the computer we're talking about at the moment. He does make that argument. That's not, I believe, consistent with the language of the actual claim because the claim and claim two – let's be clear. Claim two, Mr. Gunnar admits, required it to be only one. Was it? That's – he admits that's a one-to-one unique connection. Page 15 of the blue brief does that. Is that original claim two? Original claim two. And that's the same original claim two that they told the patent office. In general, we've made that into claim one. And you can put them aside for a moment, but Parsingham in general. And when you look at the structure of the language of claim one, it is the same as the structure of the language of original claim two. In other words, they each coupled to a computer. And that language, if it meant unique coupling in claim two, original claim two, it means the same thing in issue claim one. And everyone agrees that's what it meant in the original claim two. And therefore, that's what it should mean in issue claim one, particularly when the patent applicant told the patent office that's what they were doing. For them to tell the patent office in general, we're adding the limitation of claim two to get it issued. And then later to say, well, we had an unspoken change that wasn't really there. That contravenes directly the notice function that Your Honor was raising earlier and I think would be improper to permit. There's one final point I'd like to make. Actually, two, if I may. The specification portion, I'd like to address the issue that was raised by Judge Crost earlier regarding the interpretation to be given to the language of column three. The language at the top of column three, which says if it's not an explicit definition, it's as close as you get. You're talking about line 10? Exactly. And as I say, if it's not an explicit definition, it's only because they were using words inarticulate. It reads to me like an explicit definition. The question, really, that's been raised in the argument, is a definition of what? The system or merely antibody in the system? And Mr. Gunter argues that you need to go up a paragraph and that paragraph above, which talks about antibody, means that this paragraph is also talking about antibody. I suppose I could see his argument, but I don't think that's what it means. When you look at the first words and the first sentence of the language at column three, line 10, it says, in a system that distributes the storage across the memory devices of the network. That is the claimed system that we're talking about in all these sort of claims. It's not saying in a type of that system. It's saying in a system which plainly is the claimed invention that we're addressing here. It's not saying in a type of that, an embodiment of that. And yes, there are different types of inventions that are claimed in this specification overall. That's the issue that Chief Judge Michel raised. But it's saying of the type of system or invention that is the subject of these asserted claims, this is what it means. The question is not whether that paragraph refers to the invention or an embodiment of the invention. The question goes back to the threshold issue of what does this claim say? Does this claim read on that embodiment, or does the claim read on a broader concept? So I'm not sure that that paragraph in column three really helps us one way or the other, except I think that paragraph is clearly consistent with the district court's instruction. At a minimum, it pushes you quite far in that direction, I believe, as a reader of the document. And when you combine that with the file history, that is narrowing in exactly that same direction. I don't believe there's a fair reading of those two pieces of intrinsic evidence that takes you outside the meaning given by the district court, particularly, and let me just add this because it's a point that Judge Cruz raised, particularly when that's the common meaning of the term. We're not talking about putting a bizarre, strange meaning of the word local via these two pieces of intrinsic evidence. We're talking about a meaning that the two leading technical dictionaries that are relied upon regularly by this court and others say that's what local means. All right, time has expired. Thank you, Mr. Powers. Mr. Connolly, you have up to three minutes for rebuttal. Your Honor, I'd like to deal first with the point that Mr. Powers mentioned about the original claim talks about a computer coupled to a network and then that was changed to a memory device coupled to a network versus a memory device coupled to a computer. The fact is, so he says network systems are excluded, but every persistent memory device disclosed in the patent is always coupled to both a network and a computer. And if you look at the actual language that Mr. Powers focused on in 1391 where the applicant explained why he was amending the claims, it says, it refers to a RAM associated with each network, computer, network. He's talking about a network. And then he talks about hard disks, plural, not singular, hard disks associated with a network, network and computer. The fact is that all through the case, it talks about a network memory device. And when Mr. Powers said he never made the argument below that it couldn't be plural memory devices to one computer, he did make it. On 1153 and 1154, he basically said, or Harper basically said, it was a one-to-one relationship. Now, the fact is that the reasons for the changes given by the applicant do not talk about network. They do not talk about direct connection. They do not talk about a unique connection. They basically say, applicants submit none of the reliable references, teachers suggest local volatile memory devices, and then he gives the examples, having portions of a shared addressable memory space mapped thereon. That is the essence of why the changes were made. It was not to convert from a network system to a non-network system. Now, Mr. Powers said the structure of Claim 1 as issued is the same as the structure of original Claim 2. I submit it is not. You can compare the language. There are significant omissions. Claim 2 is very clear. It talks about the local persistent memory devices each coupled to a respective one. I submit that the issue of Claim 1 doesn't come close to that language and that Mr. Powers' position is not well taken. As to the Column 9 and 10 material, I suggest that that is not directed to a different aspect of the invention. When he says it is directed to a directory manager, that is how the system works. The shared addressable memory space involves a directory manager that directs requests for the data from one to the other. 9 and 10 is dealing with how this works. It talks about the node owner of the memory device can access that device. It talks about local memory control. It talks about it at the bottom of Column 9. That is exactly what this system is all about. Finally, the examiner's comments on the parish reference 1350 show that the examiner knew that local could be defined in lots of different ways. He uses local over and over again in the first two paragraphs and basically he says local can mean one-to-one. It can mean more than one-to-one. It can mean more than one-to-more-than-one. That is exactly our position. I submit that the District Court got it wrong and that this Court should reverse the District Court's holdings. That's your question. Thank you, sir. We thank both counsel. We are already working to a close case. Thank you.